IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONOVON LEE, | ) |
| | ) |
| Plaintiff, | ) 2: 18-cv-1297 |
| | ) |
| vs. | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| TROOPER ADAM JANOSKO, CAPTAIN SARAH TEAGARDEN, TROOPER JOHN BOARDMAN, CAPTAIN F. SALVAY, HEARING EXAMINER L. FISCUS, AND LT. M.V. SMITH, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION[1]**

Plaintiff, Donovon Lee, is a state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently incarcerated at SCI-Forest. The events giving rise to this lawsuit arise out of incidents which occurred while Lee was housed at SCI-Fayette. Defendants remaining in this lawsuit are Defendants Janosko, Teagarden, Boardman, Salvay, Fiscus, and Smith, collectively referred to as the "Commonwealth Defendants." The Commonwealth Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the motion will be granted and entry of summary judgment in favor of the Commonwealth Defendants will be entered.

**Relevant Procedural History**

Lee commenced this action on September 28, 2018, by filing a motion for leave to proceed *in forma pauperis* with an attached pro se Complaint (ECF No. 1). Named as defendants were the

---

[1]   In accordance with the provisions of 29 U.S.C. § 636(c)(1), all served and identified parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 18, 36, 39, and 95.

1

Commonwealth Defendants and FBI Special Agent Eric Rardain. Lee's request for IFP status was granted on October 5, 2018, and the Complaint officially filed that day. (ECF No. 4). On January 9, 2019, the case was administratively closed and stayed due to a lapse of certain appropriations of the United States Department of Justice. (ECF No. 27). On February 1, 2019, the case was reopened.

On March 11, 2019, Lee filed an Amended Complaint (ECF No. 41), which remains his operative pleading. Defendant Rardain filed a motion to dismiss for lack of jurisdiction (ECF No. 43). After briefing by the parties, the motion was granted and Defendant Rardain was dismissed from this case. (ECF No. 54).

The Commonwealth Defendants filed an Answer to the Amended Complaint on March 25, 2019. (ECF No. 47). Discovery has closed and the Commonwealth Defendants now move for summary judgment arguing that (i) summary judgment should be granted to Commonwealth Defendants Salvay, Fiscus, and Smith based on Lee's failure to exhaust his administrative remedies on his claims against them and (ii) summary judgment should be granted to all Commonwealth Defendants because the record is insufficient to support Lee's claims that his constitutional rights were violated. (ECF No. 83). In support of their motion for summary judgment, the Commonwealth Defendants filed a concise statement of material facts (ECF No. 84), an appendix of record evidence (ECF No. 85), and a brief. (ECF No. 86). In response, Lee filed a brief in opposition. (ECF No. 88). The Commonwealth Defendants filed a reply brief (ECF No. 90), to which Lee filed a sur-reply brief. (ECF No. 93). The matter is fully briefed and ripe for disposition.

**Factual Background**

The following relevant factual background is taken from the summary judgment record, and is viewed in the light most favorable to Lee, as he is the non-movant.

This case concerns the legality of discrete events that began when a letter was received in the Pennsylvania State Patrol Carlisle Station on January 18, 2018. As explained in the Affidavit of Probable Cause,

> On 1/18/18, at approximately 1400 hrs., Tpr. MASCI, PSP Carlisle Station received a letter that was addressed to him and marked "legal mail." The return on the white envelope was from SCI Fayette. Above the return address Donovon LEE's name and inmate number MZ7143 were listed. Upon opening the letter Tpr. MASCI began to feel ill and light headed. Other Troopers came to Tpr. MASCI's aid. While attempting to exit the station, Tpr. MASCI collapsed. While Troopers were transporting Trp. MASCI to Carlisle Regional Medical Center he passed out. Another Trooper and a civilian employee who were also in contact with or in the vicinity of the letter also felt ill and were transported to Carlisle Regional Medical Center for treatment and observation. This also caused the Carlisle Station to be partially shut down.

Affidavit of Probable Cause, ECF No. 85-2. It is believed that the letter was soaked with synthetic liquid K2. *See* Pennsylvania State Police Incident Report, ECF No. 85-1 at 1.

The Pennsylvania State Police ("PSP") obtained a search warrant to search Lee's cell and Lee was interviewed in a conference room at SCI-Fayette on January 18, 2018, by FBI Special Agent Eric Rardain and Pennsylvania State Trooper John Boardman. Captain Salvay of the DOC was also present during the interview. The interview began at approximately 10:45 PM and lasted approximately thirty-five minutes, until 11:21 PM. *See* PSP Incident Report (ECF No. 85-5 at 1,3) (Interview began at "2248 hrs" and interview ended at "2321 hrs."). During the interview, which was audio recorded, Lee admitted sending the letter to Trooper Masci. Initially, Lee stated that he ordered the stationery/ paper from commissary and "that he did not buy the paper from anyone

and that the paper was only ever in his possession." PSP Incident Report (ECF No. 85-5 at 2). Later in the interview, however, Lee stated,

> that he knew of several people in the Unit (SCI) that had K2. LEE related that he would go to "P-Funk" if he wanted paper laced with K2. LEE related that he knows people in prison that use K2 and it is referred to as "Deuce." LEE admitted that he would know where to get it and then stated, "but I didn't pay him. I just needed some papers, so he gave me paper . . . and unfortunately, he does have that stuff in his cell so there's a chance that it got on the paper." . . . LEE admitted that the paper he got from P-Funk was the paper that he used to write a letter to Tpr. MASCI. LEE admitted that the paper was not the paper that he got from the commissary. LEE then tried to explain that he wrote two different letters on the day he wrote to Tpr. MASCI and that he did not intend to send him one with K2 on it to Tpr. MASCI. . . .
>
> He acknowledged that he made a mistake. LEE states, "I did not intentionally try to hurt him." . . . He further acknowledged that he wrote it because he was frustrated and made a bad decision. He stated, "I got the paper (from P-Funk) in a moment of frustration." He was confronted on knowing which paper he sent and he acknowledged that he knew that the paper he sent to Tpr. MASCI had a substance on it.

(*Id*.)[2]

Plaintiff alleges that SA Rardain and Trooper Boardman "did knowingly and willing use their positions in law enforcement to violate Mr. Lee's 8th Amendment right to be free of cruel and unusual punishment by using a torture tactic to get answers they wanted to hear even if they were not true. . . ." He further alleges that Captain Salvay noticed this inappropriate conduct and "took no action to prevent it." *Id*. at ¶ II(D). He claims that Defendants deprived him of sleep, thereby causing him to make a false confession.

At approximately 11:45 PM, Defendant Lt. Smith had Lee placed in a suicide smock and a "hard cell" where he remained for seven days, from January 18, 2021 until January 24, 2018.

---

[2] The undisputed summary judgment record reflects that during Lee's misconduct hearing held on February 6, 2018, he admitting sending the letter, but stated that he sent the letter to thank Tpr. Masci and did not put K2 on it. (ECF No. 85-4 at 2).

Lee contends that he was not suicidal and that the smock was used as punishment and in retaliation for the incident. He alleges that during this time period, he had no hygiene products or showers, at times had no toilet paper, and was subjected to constant illumination, in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Amended Compl., at 7.

On January 24, 2018, Defendant Salvay issued Lee a misconduct charging him with (1) possession of a dangerous or controlled substance and (2) unauthorized use of mail or telephone. Misconduct C092857 (ECF No. 85-4 at 1). Lee argues that the issuance of this misconduct violates his due process rights as the misconduct was issued before the police investigation had been concluded.

Criminal charges against Lee remain pending in the Court of Common Pleas of Cumberland County as a result of the letter he mailed on January 18, 2018. The public criminal docket reflects that a pretrial conference is scheduled in the case for March 11, 2021. *See Commonwealth v. Lee*, Docket Number: CP-21-cr-0000338-2020 (available at https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-21-CR-0000338-2020&dnh=rCxir%2BPORDtliBa3MNpx2w%3D%3D) (last viewed 3/9/2021).

Having identified the claims at issue and the factual basis for those claims, the Court now turns to the threshold question of whether Lee has exhausted the administrative remedies available to him. *See Rinaldi v. United States*, 904 F.3d 257, 264-65 (3d Cir. 2018) (noting exhaustion of administrative remedies is a threshold question).

### *Exhaustion under the Prisoner Litigation Reform Act*

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002).

Defendants argue that Lee has failed to exhaust on every grievance he made about the issues alleged in this case, although the summary judgment record contains no grievances which were filed about the issues alleged in this case. According to Defendants, only a single grievance in the early 2018 period, No. 733821, was appealed to the final level of review and that grievance was unrelated to this case. Lee responds that the Inmate Grievance Procedure outlined in DC-ADM 804 is not applicable to any of his claims. According to Lee, his placement in administrative custody, including being placed in a suicide smock, was pursuant to DC-ADM 802, and DC-ADM 804 does not apply to issues covered under DC-ADM 802. Similarly, Lee argues that the issuance of misconducts falls under DC-ADM 801, Inmate Discipline, and, again, DC-ADM 804 does not apply.

Information concerning the formal resolution of placement in administrative custody or misconduct charges was not provided to the Court by either party. However, applicable versions of both DC-ADM 802 and 801 are available in full on the DOC's website, www.cor.pa.gov. Pursuant to DC-ADM 802, the rationale for placement in administrative custody ("AC") must be read and explained to the inmate. An inmate may appeal the initial decision of the Program Review Committee ("PRC") concerning initial placement in AC to the Facility Manager. An inmate may appeal the decision of the Facility Manager to the Office of Chief Hearing Examiner. DC-ADM 802, Section 2 (C); www.cor.pa.gov.

The basic procedure for issuance of misconducts and formal resolution of misconduct charges is as follows:

* A "misconduct report" form, written by a staff member and given to the inmate on the date it is written, notifies the inmate of the rule violations with which he is being charged and the facts upon which the charges are based.

* A hearing, before a Hearing Examiner, will be scheduled no less than 24 hours, and no more than seven working days, after service of the misconduct. For a given misconduct, the date of the upcoming hearing is specified in the Misconduct Report.

* Any Request for Representation and Witnesses by due by 9:00 AM the after the misconduct is served. Hearing Supplement, Inmate Version, and Witness Statement forms may be submitted at the hearing.

* Assistance at the hearing, as well as witness testimony, will only be permitted as approved by the Hearing Examiner.

* If the inmate is found guilty, a range of possible sanctions may be imposed. As relevant here, these include placement in disciplinary custody for up to 90 days.

* A first-level appeal may be submitted to the PRC, in writing, within 15 days after the hearing, and the PRC is to act on the appeal within 7 working days.

* Thereafter, the inmate may appeal to the Facility Manager and, if still dissatisfied, to the DOC Chief Hearing Examiner.

DC-ADM 801, www.cor.pa.gov.

    The undisputed summary judgment record reflects that Lee appealed his misconduct to the PRC and to the Facility Manager. *See* ECF 85-4 at 4, 6. It is not clear from the summary judgment record if Lee appealed the Facility Manager's decision to the DOC Chief Hearing Examiner.[3] Defendants have produced no credible evidence, such as an affidavit from the Chief Hearing Examiner, confirming that a review of the Chief Hearing Examiner's records confirm that Lee never appealed any of the issues involved in this case to final review. With the current summary judgment record, the Court is reluctant to find that Lee has failed to perfect his appeal to final review.

---

[3] Lee in his sur-reply states that he filed an appeal of the misconduct to the Central Office, but no party produced that document for the Court.

The Court will proceed to analyze Lee's claims on the merits.

**Standard of Review**

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well-settled. A court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 250.

On a motion for summary judgment, the facts and the inferences to be drawn therefrom should be viewed in the light most favorable to the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Hudson v. Proctor & Gamble Paper Prod. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson*, 477 U.S. at 255; *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004); *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with respect to that issue. *See id*. "Where the record taken

as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial'." *Matsushita*, 475 U.S. at 587; *Huston,* 568 F.3d at 104.

This standard is somewhat relaxed with respect to pro se litigants. Where a party is representing himself pro se, the complaint is to be construed liberally. A pro se plaintiff may not however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g., Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000); *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment.").

With these standards in mind, the Court will address each of Lee's claims.

**Discussion**

1. *Fourth Amendment Claim*

Lee alleges that the search of his cell violated his rights under the Fourth Amendment to be free from unreasonable searches and seizures. Specifically, Lee contends that the search warrant that was issued by Magisterial District Judge Michael Joseph Defino, Jr., was invalid because the magisterial district judge's commission had expired and the search warrant does not have a warrant control number.

Lee's arguments are without merit.  "The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).  Thus, the allegation that Lee's cell was improperly searched fails to state a claim for a violation of the Fourth Amendment. *See Crosby v. Piazza,* 465 F. App'x 168, 172 (3d Cir. 2012).  Moreover, even assuming the Fourth Amendment afforded Lee protection,

the summary judgment record reflects that the warrant was properly issued as the commission of the magisterial district judge had not expired. A Continuation Certificate was issued on September 9, 2017, to Michael Joseph Defino, Jr., a magisterial district judge of County of Fayette, for the term beginning January 2, 2018 and ending January 2, 2024. *See* ECF 85-3 at 2.

Accordingly, Lee's Fourth Amendment claim fails as a matter of law and entry of summary judgment in favor of the Commonwealth Defendants will be entered.[4]

2. *Sixth Amendment*

Through the Amended Complaint, Lee asserts that certain Defendants violated his Sixth Amendment right of due process by writing a misconduct and imposing discipline under DOC policy. It is a well-established legal principle that the Sixth Amendment only applies after the initiation of <u>criminal</u> proceedings and has no applicability in non-criminal proceedings. *Rega v. Southwestern Area Agency on Aging*, 2017 WL 3447889, at *7 (W.D.Pa. 2017)(citing *Kirby v. Illinois*, 405 U.S. 682, 689-90 (1972). Internal disciplinary procedures within the DOC are not criminal matters and as such cannot give rise to a Sixth Amendment claim. Lee was not found "guilty of a crime" by the Hearing Examiner; rather, he was found guilty of a misconduct. *See Smith v. Holt*, 2006 WL 485352, at *2 (M.D.Pa. 2006) (stating that prison disciplinary proceedings are not criminal proceedings within the meaning of the Sixth Amendment*); see also Kirby v. Illinois*, 406 U.S. 682 (1972); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

---

[4] To the extent that Lee is asserting any claims which would impact his criminal proceeding, such are not properly before the Court at this time. In *Heck v. Humphries*, 512 U.S. 477, 487 (1994), the Supreme Court held that when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether judgment in favor of the prisoner would necessarily imply invalidity of the conviction or sentence; it if would, the complaint must be dismissed unless the plaintiff-prisoner can demonstrate that conviction or sentence has already been invalidated. The public docket for Lee's criminal proceedings reflect that the charges stemming from the mailing of the 2018 letter are still pending.

For these reasons, Lee's Sixth Amendment claim fails as a matter of law and entry of summary judgment in favor of the Commonwealth Defendants will be entered.

3.    *Eighth Amendment*

The Eighth Amendment as applied to the states through the Fourteenth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986). It prohibits deprivations suffered during incarceration "that constitute an 'unnecessary and wanton infliction of pain,' including 'those that are totally without penological justification.' " *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297, 308 (1991)). A successful Eighth Amendment claim based on a prisoner's conditions of confinement has two components. "First, 'the deprivation alleged must be, objectively, sufficiently serious,' resulting in 'the denial of the minimal civilized measure of life's necessities.' " *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). This is a totality-of-the circumstances analysis. "Conditions . . . alone or in combination[ ] may deprive inmates of the minimal civilized measure of life's necessities," and "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Id*. at 373-74 (quoting *Wilson*, 501 U.S. at 304, and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

That said, the Supreme Court has recognized that not every discomfort or inconvenience experienced by prisoners implicates the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Thus, "only those deprivations denying the minimalized civilized measures of life's necessities 'are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Id*. at 9 (citation omitted).

Here, Lee contends his Eighth Amendment rights were violated when he was deprived of sleep during the police interview, when he was placed in Administrative Custody and deprived of showers and hygiene products, and placed in a suicide smock. The claims will be addressed seriatim.

    1.    *Sleep Deprivation*

Lee's allegation of sleep deprivation stems from the time he was interviewed on January 18, 2018. The sole allegation in the Amended Complaint relating to sleep deprivation is as follows:

> On 1/18/2018 around approx. 2245 hours FBI Special Agent Eric Rardain and Pennsylvania State Police Trooper John Boardman and Captain F. Salvey of the Pa DOC had Mr. Lee, Plaintiff, in a conference room at SCI Fayette to speak with Mr. Lee about PA 2018-59958 where Mr. Lee allegedly sent a letter laced with liquid K-2 to a state trooper causing the Trooper to go to the hospital which at the time Mr. Lee did not know of the allegations. FBI Special Agent Eric Rardain asked Mr. Lee how he was doing in which Mr. Lee responded that he was "tired and confused" as he did not know what was going on. FBI Special Agent Eric Rardain then asked if "they" [the defendants Rardain, Boardman, and Salvay] had woken Mr. Lee up to which Mr. Lee responded "No I was woken up when officers took my celly from the cell." Rardain asked if the interview could be recorded and Mr. Lee agreed. At which time Rardain and Boardman did knowingly and willingly use the most effective form of torture "sleep deprivation" knowing Mr. Lee was tired and confused to force a false confession (as accused by Capt. Salvay in misconduct CO92857) while Capt. Salvay watched and took no action. All in violation of Mr. Lee's 8th Amendment right to be free of cruel and unusual punishment.

Lee does not dispute that the interview ended approximately thirty-five minutes later at "2321 hours." *See* PSP Incident Report, ECF No. 85-5 at 3.

The Court of Appeals for the Third Circuit has recognized that "[s]leep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment.'" *Mamman*a, 934 F.3d at 374 (quoting *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013); accord *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999)). In this case, Lee contends that he gave a

"false confession" because Defendants "did knowingly and willingly use the most effective form of torture 'sleep deprivation' knowing Mr. Lee was tired and confused . . . ."

Under a totality-of-the circumstances analysis, the Court finds that the purported deprivation of sleep by Defendants on this one occasion for a limited duration is not of such magnitude as to rise to the level of an Eighth Amendment violation.[5]

2. Conditions of Confinement while in Administrative Custody

Lee was placed in administrative custody for a total of seven days, from January 18, 2018, to January 24, 2018, and according to Lee, during this time he was subjected to unfit living conditions in violation of the Eighth Amendment. He alleges that he was placed in a "hard cell," had no hygiene products or showers, at times had no toilet paper, and was subjected to constant illumination. He also contends that he was placed in a suicide smock although he was not suicidal.

The Eighth Amendment prohibition against cruel and unusual punishment demands that prison officials do not house inmates under conditions that deprive them of one or more basic human needs, such as the basic human need for reasonable safety, adequate physical space, and the need for some degree of ventilation and fresh air. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). However, the Eighth Amendment does not mandate that prisons be free of discomfort. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)). "No static test determines whether conditions of confinement are 'cruel and unusual.' These terms must

---

[5] To the extent that Lee is contending that Defendants violated his Fifth Amendment right to be free from compulsory self-incrimination by using physical abuse to extract an inculpatory statement from him, such claim is barred by the *Heck* rule. A claim that a confession was coerced necessarily calls into question a conviction. However, because Lee's criminal charges remain pending, he cannot at this time demonstrate the invalidity of any conviction based on the alleged coerced confession.

'draw [their] meaning from the evolving standards of decency that mark the progress of a maturing society.' " *Tillery v. Owens*, 719 F.Supp. 1256, 1261 (W.D.Pa. 1989) (citing *Rhodes*, 452 U.S. at 346). Conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. *Rhodes*, 452 U.S. at 348.

To establish an Eighth Amendment claim, Lee must show that he was deprived of "the minimal civilized measure of life's necessities." *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). This includes showing that the conditions of his confinement pose "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834. In reviewing this type of claim, courts have stressed the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" as critical to a finding of cruel and inhumane treatment. *Rhodes*, 452 U.S. at 362–63. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained by the United States Supreme Court:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists.

*Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991) (citations omitted). *See also Tillery v. Owens*, 907 F.2d 418, 427 (3d Cir. 1990) (elaborating on factors to be considered, including "food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security and staffing") (citing *Peterkin v. Jeffes*, 855 F.2d 1021, 1025–26 & n. 7 (3d Cir.1988)).

In addition to showing conditions that pose a significant risk of serious harm, the inmate must show that the person or persons responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. As described by the Supreme Court in *Farmer*, the standard for determining deliberate indifference in a conditions of confinement case is whether a prison official knew of and disregarded an excessive risk to an inmate's health or safety. *Farmer,* 511 U.S. at 837. The Court added that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of harm." *Id*. at 842.

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (quoting *Rhodes*, 452 U.S. at 349 n. 14). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security. *Id*. at 322.

In the present case, for the reasons that follow, the Court concludes that there exists no genuine issue of material fact that the deprivations alleged by Lee constitute cruel and unusual punishment. Accordingly, the Eighth Amendment claims will be denied.

Lee was placed in administrative custody after admitting to sending a letter to a state trooper which was laced with liquid K2. The recipient of the letter, as well as other PSP troopers and a civilian employee, fell ill and were taken to Carlisle Medical Regional Medical Center for treatment and observation. The Carlisle State barracks were also partially shut down as a result.

Despite his statements about the conditions of his confinement while in administrative custody, Lee has neither alleged nor produced evidence that any of the conditions in his cell jeopardized, or potentially jeopardized, his health, or caused the cell to be unfit for habitation. To the extent that Lee alleges discomfort in the cell, he does not meet the requirements for a claim of cruel and unusual punishment.

To the extent Lee is challenging his placement in administrative custody, placement in the restricted housing unit or on administrative custody status, without more, does not violate the Eighth Amendment. *Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1977) (holding that the restrictive conditions in administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do not violate the Eighth Amendment.).

The denial of a shower or hygiene items for a limited period of time also does not violate the Eighth Amendment. *See, e.g., Gay v. Shannon*, 211 F. App'x 113, 116 (3d Cir. 2006) (holding that restriction from taking showers while plaintiff prisoner was attending and testifying at a federal trial was insufficient to state an Eighth Amendment claim); *Ebersole v. Pennsylvania*, 2007 WL 2815730, at *10 (M.D.Pa. Sept.2 5, 2007) (holding that denial of showers for ten days while in the restricted housing unit did not rise to the level of an Eighth Amendment violation). Lee was denied showers for, at most, seven days while in administrative custody. Such a limited deprivation is insufficient to establish an Eighth Amendment violation.

Additionally, the Court of Appeals for the Third Circuit has held that the temporary denial of toilet paper does not ordinarily violate the Eighth Amendment. *Brooks v. Bledsoe*, 682 Fed. Appx. 164, 170 (3d Cir. 2017) (affirming dismissal of Eighth Amendment claims based on, among other things, denial of toilet paper); *Freeman v. Miller*, 615 Fed. Appx. 72, 77 (3d Cir. 2015)

(noting that the denial of toilet paper for approximately seven days did not violate the Eighth Amendment).[6]

As to Lee's claims about Lt. M.V. Smith unnecessarily placing him in a hard cell and suicide smock, several courts have found that placement on suicide watch for a short duration, even when unnecessary, does not rise to the level of cruel and unusual punishment. *See, e.g.*, *Fattah v. Rachovan*, 2019 WL 6893757, at *7 (M.D. Pa. Dec. 18, 2019) (granting summary judgment and finding that placement in a suicide smock and on suicide watch, even if unnecessary, does not violate an inmate's Eighth Amendment rights); *Sheldon v. Smith Cty. Jail Med. Clinic*, 2010 WL 1658217, at *4 (E.D. Tex. Apr. 22, 2010), *aff'd*, 439 F. App'x 343 (5th Cir. 2011) (stating that placing an inmate on suicide watch was not "unreasonable or unconstitutional" even though these precautions were unnecessary).

Moreover, Lee has not shown that Defendant Smith acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. The Court finds that the record is void of any evidence from which a reasonable factfinder could find that Defendant Smith, or any other Defendant in this case, knew of and disregarded an excessive risk to Lee's health or safety. *Farmer,* 511 U.S. at 837.

While each of Lee's allegations are included in the Eighth Amendment's protections, none are sufficiently serious to constitute a constitutional violation given their short duration and their relation to legitimate prison interests. For these reasons, Lee's Eighth Amendment claim fails as

---

[6] Lee only states in general terms that he was not provided hygiene items. He provides no details of what hygiene items he did not have and he does not indicate what time period he was allegedly without toilet paper. However, the record reflects that he was in administrative custody no more than seven days.

a matter of law and entry of summary judgment in favor of the Commonwealth Defendants will be entered.

　　　　4.　　　*Retaliation Claims*

Throughout his Amended Complaint and in response to Defendants' summary judgment motion, Lee makes unsupported statements that Defendants' various actions were in "punishment and in retaliation for the incident" giving rise to the PSP investigation.

"Retaliating against [an inmate] for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529-31 (3d Cir. 2003)).  "A prisoner alleging retaliation must show (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action.  *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)).

The fatal problem for Lee is that he cannot establish a causal link between any protected conduct he engaged in and the actions of the Defendants which give rise to this case.  Thus, to the extent that any of Lee's claims can be deemed to be retaliation claims, same are dismissed.

## Conclusion

For all these reasons, Defendants' motion for summary judgment will be granted on all claims and judgment will be entered in favor of Defendants. An appropriate order will be filed separately.

Dated:  March 9, 2021

　　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　 s/Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　　　Cynthia Reed Eddy
　　　　　　　　　　　　　　　　　　　　Chief United States Magistrate Judge

cc: **DONOVON LEE**
MZ-7143
SCI Forest
PO Box 307
1 Woodland Drive
Marienville, PA 16239
(via U.S. First Class Mail)

**Sarah J. Simkin**
PA Office of the Attorney General
(via ECF electronic notification)